## Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
 2                 SHERMAN DIVISION
 3 MARK RAKOWSKI,           *
                            *
 4      Plaintiff,          *
                            *  Civil Action
 5 vs.                      *  No. 4:19-cv-0883-ALM
                            *
 6 LENNOX INTERNATIONAL,    *
   INC.,                    *
 7                          *
        Defendant.           *
 8
 9          **********************************
10           ORAL AND VIDEOTAPED DEPOSITION OF
                     BAXTER KRUTSCH,
11     INDIVIDUALLY AND AS CORPORATE REPRESENTATIVE OF
                 LENNOX INTERNATIONAL, INC.
12                  FEBRUARY 12, 2021
               (Conducted Remotely via Zoom)
13
14          **********************************
15     ORAL AND VIDEOTAPED DEPOSITION OF BAXTER KRUTSCH,
16 produced as a witness at the instance of the Plaintiff,
17 and duly sworn, was taken in the above-styled and
18 -numbered cause on the 12th day of February, 2021, from
19 9:32 a.m. to 5:19 p.m., before Cindy Dutsch, CSR, RPR in
20 and for the State of Texas, reported by machine
21 shorthand, with the witness located in Clinton, Utah,
22 pursuant to the Federal Rules of Civil Procedure, the
23 Emergency Orders regarding the COVID-19 State of
24 Disaster, and any provisions, if any, stated on the
25 record.
```

## Page 2

```
 1              A P P E A R A N C E S
 2              (Appearing remotely)
 3
   FOR THE PLAINTIFF:
 4
       Mr. Brian P. Sanford
 5     Ms. Elizabeth "BB" Sanford
       THE SANFORD FIRM
 6     1910 Pacific Avenue
       Suite 15400
 7     Dallas, Texas  75201
       (214) 717-6653 (telephone)
 8     (214) 919-0113 (facsimile)
 9     bsanford@sanfordfirm.com
       esanford@sanfordfirm.com
10
11 FOR THE DEFENDANT:
12     Mr. Brian Jorgensen
       Ms. Victoria L. Bliss
13     JONES DAY
       2727 North Harwood Street
14     Dallas, Texas  75201
15     (214) 220-3939 (telephone)
       (214) 969-5100 (facsimile)
16     bmjorgensen@jonesday.com
       vbliss@jonesday.com
17
18 ALSO PRESENT:
19     Mr. Mark Rakowski
       Ms. Jodie Michalski
20
```

## Page 3

```
 1
 2                    I N D E X
 3                                                  PAGE
 4 Appearances ....................................   5
   Stipulations .................................... 269
 5
 6 BAXTER KRUTSCH
 7    Examination
        By Mr. Sanford ...........................   5
 8
 9 Signature and Changes ........................... 270
   Reporter's Certificate .......................... 272
10
11
12
                         EXHIBITS
13
14              (None offered)
```

## Page 4

```
 1                   P R O C E E D I N G S
 2              THE REPORTER:  Going on the record at
 3 8:32 [sic] a.m.  Today's date is February 12, 2021.
 4 This is the oral deposition of Baxter Krutsch, and it is
 5 being conducted remotely, via Zoom, in accordance with
 6 the Emergency Orders regarding the COVID-19 State of
 7 Disaster.
 8              My name is Cindy Dutsch, and my CSR
 9 number is 5554.  I will be conducting the proceedings
10 from my residence in Irving, Texas, and the witness is
11 located in Clinton, Utah.
12              Will counsel please state their
13 appearances, where you're presently located, and any
14 agreements for the record.
15              MR. SANFORD:  Brian Sanford and Elizabeth
16 "BB" Sanford on behalf of the plaintiff Mark Rakowski,
17 who is also attending via Zoom.  We're all in Dallas,
18 Texas.
19              MR. JORGENSEN:  This is Brian Jorgensen
20 and Tori Bliss representing the defendant Lennox, and we
21 are both in Dallas, Texas.
22              THE REPORTER:  Mr. Jorgensen, you're
23 still pretty quiet, so if you make an objection, you
24 might have to yell at me.
25              MR. JORGENSEN:  Okay.  I'll try not to
```

**13**

1  discrimination and retaliation, and investigating
2  reports of discrimination and retaliation, true?
3       A.   True.
4       Q.   And Item 62, you're the company person to
5  speak on training of plaintiff's supervisors to
6  recognize and prevent discrimination and retaliation in
7  the workplace, true?
8       A.   True.
9       Q.   And lastly, you're the company person to speak
10 on steps taken to protect plaintiff from discrimination,
11 true?
12      A.   True.
13      Q.   And the plaintiff in this case is Mark
14 Rakowski, true?
15      A.   True.
16      Q.   Now, I know you're not designated, and so I --
17 I need to make a distinction.  So you're speaking on
18 behalf of the company for those topics, but I'm also
19 asking you questions individually, as a witness, to the
20 extent you're not speaking on those.
21           And so what I'll -- I'll try to delineate
22 that, and if you can help me delineate that.  If I'm
23 asking something and you want to say, look, this is just
24 me personally, I'm not speaking on behalf of the
25 company --

**14**

1       A.   Okay.
2       Q.   -- please tell me as well, all right?
3       A.   Okay.
4       Q.   Okay.  So let me just ask you, are -- are
5  you -- are you speaking on behalf of the company for the
6  reasons that Lennox alleges it terminated Mark Rakowski?
7            MR. JORGENSEN:  I'll jump in here.  He is
8  not.  We are not -- the company has not designated
9  Mr. Krutsch for -- for that topic.
10           MR. SANFORD:  All right.
11      Q.   So let me just ask you then as -- in your
12 individual capacity.
13           What is your understanding personally,
14 not as a company representative, of Lennox's reasons or
15 reason for firing Mark Rakowski?
16      A.   The -- the reason for Mark Rakowski's
17 termination was as a result of his inability to
18 effectively lead his team, engage his team, motivate his
19 team from the aspect of -- of expected leadership
20 behaviors of a -- of an executive leader at the
21 organization.
22      Q.   How do you know that Lennox fired Mark
23 Rakowski because of alleged inability to be an effective
24 leader or engage his team?
25      A.   So that's the question, how -- how do I -- how

**15**

1  do I know that?
2       Q.   Yes.
3       A.   My role at the -- at the time as the HR
4  director of Allied Air Enterprises was involved in the
5  process of observing personally, receiving and providing
6  feedback in regards to the matter, and evaluation of the
7  decision process that -- that ultimately resulted in the
8  termination of Mark Rakowski.
9       Q.   So tell me about that.
10           What did you observe personally
11 about -- about Mark Rakowski's leadership?
12      A.   I mean, yeah, a -- a specific example or do
13 you want me to just give you an example or two that
14 I -- that I observed?
15      Q.   Sure, give me a specific example.
16      A.   Say -- so personally observed a -- an
17 inability and desire to work and align with the -- the
18 local vice president/general manager of the business,
19 upon which he supported, regarding staying aligned and
20 understanding what the desire -- what the needs and
21 what the support from -- his team needed to be
22 successful.
23           I received feedback from members of the
24 tech support team, under which Mark was the leader of,
25 on several instances that -- upon the time which he

**16**

1  resumed direct leadership because there was a vacancy in
2  the manager of the department, that the morale, the
3  engagement, and the satisfaction of the team was -- was
4  declining as a result of his leadership style and the
5  interactions he had with the team up to and including
6  the process of backfilling the position with some
7  potential internal candidates and how that was handled.
8            And the conversations that Mark had with
9  the team moving through that process resulted in
10 employees resigning from the organization, making
11 statements along the conversations of, I can't work
12 for -- I can't work for somebody like that.
13      Q.   So who resigned saying that they can't work
14 for someone like that?
15      A.   His name is Jason Lotsey.
16           THE REPORTER:  I'm sorry, repeat the last
17 name?
18           THE WITNESS:  Lotsey, L-o-t-s-e-y.
19           THE REPORTER:  Thank you.
20      Q.   Who else?
21      A.   He was the -- he was the one resignation.  The
22 other was -- that applied for it, his name was Kyle
23 Brown and he ultimately transferred to a different
24 department.
25      Q.   And what did Kyle Brown tell you?

Baxter Krutsch - 2/12/2021

**17**

1  A.  The same thing, that he was informed -- what
2  ended up happening in that situation is he was informed
3  that the only time -- he -- he told me, the only time
4  that Mark comes up is when he is mad and there's a
5  problem and he just points at the numbers and doesn't
6  ask for any context or understand what we go through on
7  a day-to-day basis; the only time he comes and talks to
8  us is when he's mad at us.
9           And then in result of the -- the
10 interviewing with him and Jason, they both were deemed
11 not ready for the job.  And they both spoke afterwards
12 how that conversation went and both shared that he
13 ultimately told them the same thing, that he was
14 personally grooming each one of them for that position
15 in the future, made the same -- in -- in their
16 viewpoint, the same promise to each of them, in essence,
17 being perceived to them as he was lying to them, and
18 they can't work for somebody who's not going to be
19 honest with them.
20     Q.  So I don't understand your -- what was the
21 lie?
22     A.  He told them that he personally picked them
23 and was going to be grooming them to take over the
24 position.
25     Q.  How was that the lie?

**18**

1  A.  Because he told that same thing to two people,
2  and you can't be personally grooming two people for the
3  same position, telling them that they're the one he has
4  chosen.
5      Q.  And so you talked to -- to Mark Rakowski about
6  that, whether or not that was true or not?
7      A.  I asked him what his conversations were with
8  them around that -- around the feedback.  We aligned
9  prior to what the feedback was going to be, and that was
10 not the conversation that we aligned that he was going
11 to share with them.
12     Q.  And so you asked point blank Mark Rakowski,
13 why did you lie to these two gentlemen, or is it true
14 that you lied to these two gentlemen?
15     A.  I asked him what the conversation was with the
16 two gentlemen.  He shared with me he did not share -- I
17 asked him if he -- if he committed to either one of them
18 that they would be selected, and he said that he did
19 not.
20     Q.  So you chose to believe the other two
21 individuals?
22     A.  They both shared the same story.  As a result
23 of that, one of them quit regarding -- well, I'll --
24 I -- what I know is that the action, behavior, and the
25 conversations that Mark would have had with his team led

**19**

1  to people on his team not being willing to work for him
2  as their leader.
3      Q.  So did you talk to other people on his team?
4      A.  Not a specific conversation that I -- that I
5  can recall.
6      Q.  So you didn't start an investigation as to
7  whether or not Mr. Kowalski [sic] was an effective
8  leader, engaged his team, had an ability to lead his
9  team?
10     A.  Well, I had general --
11         MR. JORGENSEN:  Objection, form.
12     A.  -- conversations with folks in passing and
13 stopping in my office regarding just my role as HR and
14 how things are going, you know, and they shared with me
15 frustrations that they'd had, stresses that they have in
16 the business, and we would -- we would talk through
17 them.
18         I did not have a -- if you're saying do I
19 have a dedicated investigation on a -- on a specific
20 matter, I do not have one.
21     Q.  So just to be clear, did -- did you tell or
22 give -- did you tell Mark Rakowski that people were
23 accusing him of lying?
24     A.  I told him that they said that he had promised
25 them that he was grooming them for the job.

**20**

1  Q.  And he told you that's not true?
2  A.  He said that is not what I said to them.
3  Q.  Let's talk about that you're -- you said that
4  you witnessed that -- well, first of all, before we do
5  that, anybody else besides Jason Lotsey and Kyle
6  Brown --
7          MR. JORGENSEN:  Objection, form.
8      Q.  -- on his team that you talked to that had
9  problems with him?
10     A.  On -- on his direct team?
11     Q.  Yes.
12     A.  I cannot think of a -- I -- I -- I can't think
13 of right now a specific conversation that I would have
14 had with somebody on his team directly in relation to
15 having a problem with Mark.
16     Q.  So then you said that he couldn't align with
17 the vice president, right?
18     A.  Yeah, with the vice president and general
19 manager.
20     Q.  And who was that?
21     A.  Joe Nassab.
22     Q.  How do you know he could not -- Mark Rakowski
23 could not align with Joe Nassab, the vice president and
24 general manager?
25     A.  Based on the conversation that I had with Mark

5 (Pages 17 to 20)

269

1  questions for trial.
2       THE REPORTER: The deposition is
3  complete. At this time will counsel please state their
4  stipulations with regard to custody of the transcript
5  and any other pertinent matters you want on the record?
6       MR. SANFORD: I'll keep the original.
7       Do you want the opportunity to read and
8  sign?
9       MR. JORGENSEN: Yes, we do.
10      MR. SANFORD: Okay.
11      THE REPORTER: Okay. Off the record at
12  5:19.
13      (Proceedings concluded at 5:19 p.m.)

271

1            ACKNOWLEDGMENT OF DEPONENT
2   I, _____, do hereby certify that I
3  have read the foregoing pages, and that the same is a
4  correct transcription of the answers given by me to the
5  questions therein propounded, except for the corrections
6  or changes in form or substance, if any, noted on the
7  attached Errata.

10      _____
        WITNESS NAME            DATE

270

1                ERRATA
2  WITNESS NAME: Baxter Krutsch
   DATE OF DEPOSITION: February 12, 2021

4  PAGE NO.   LINE NO.   CHANGE        REASON FOR CHANGE

272

1       IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
2                 SHERMAN DIVISION
3  MARK RAKOWSKI,           *
                            *
4      Plaintiff,           *
                            *   Civil Action
5  vs.                      *   No. 4:19-cv-0883-ALM
                            *
6  LENNOX INTERNATIONAL,    *
   INC.,                    *
7                           *
       Defendant.            *

10
        *******************************************
11           REPORTER'S CERTIFICATION
           ORAL AND VIDEOTAPED DEPOSITION OF
12              BAXTER KRUTSCH,
       INDIVIDUALLY AND AS CORPORATE REPRESENTATIVE OF
13            LENNOX INTERNATIONAL, INC.
                 FEBRUARY 12, 2021
14          (Conducted Remotely via Zoom)
        *******************************************

16      I, CINDY DUTSCH, Certified Shorthand Reporter
17  in and for the State of Texas, hereby certify to the
18  following:
19       That the witness, BAXTER KRUTSCH, was duly
20  sworn by me and that the transcript of the oral
21  deposition is a true record of the testimony given by
22  the witness;
23       I further certify that pursuant to FRCP Rule
24  30(f)(1) that the signature of the deponent:
25       _X_ was requested by the deponent or a party

273

1 before the completion of the deposition and is to be
2 returned within 30 days from date of receipt of the
3 transcript.  If returned, the attached Errata contain
4 any changes and the reasons therefor;
5           ___ was not requested by the deponent or a
6 party before the completion of the deposition.
7           I further certify that I am neither counsel
8 for, related to, nor employed by any of the parties or
9 attorneys to the action in which this proceeding was
10 taken.  Further, I am not a relative or employee of any
11 attorney of record in this cause, nor am I financially
12 or otherwise interested in the outcome of the action.
13           Subscribed and sworn to on this the 26th day
14 of February, 2021.
15
16
17
18
19
20   CINDY DUTSCH, Texas CSR #5554
     Expiration date:  04/31/22
21   Osteen & Associates Reporting Services
     Firm Registration No. 392
22   313 Northglen Drive
     Hurst, Texas  76054-3024
23   (817) 498-9990
24
25

69 (Page 273)